THOMAS L. GEIGER (SBN 199729)
Chief Assistant County Counsel
JASON W. MAUCK (SBN 255133)
Deputy County Counsel
COUNTY OF CONTRA COSTA
1025 Escobar Street, Third Floor
Martinez, California 94553
Telephone:    (925) 655-2280
Facsimile:     (925) 655-2266
Electronic Mail: jason.mauck@cc.cccounty.us

Attorneys for Defendants
CONTRA COSTA COUNTY and SOPHIA WEBB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.H.M., a minor through her next of friend BILL SORENSEN,<br><br>Plaintiff,<br><br>v.<br><br>SOPHIA WEBB, an individual, MUNISHA VOHRA, an individual, CONTRA COSTA COUNTY, a public entity, PAMELA GAGLIANI, an individual, and DOES 1 to 50, inclusive,<br><br>Defendants. | No. 3:22-cv-06026 VC<br><br>DEFENDANTS CONTRA COSTA COUNTY AND SOPHIA WEBB'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>Date:    November 14, 2024<br>Time:   10:00 a.m.<br>Crtrm: 4, 17th Floor<br>Judge: Hon. Vince Chhabria, Presiding<br>Date Action Filed:  October 12, 2022<br>Trial Date:  None Assigned |

TO PLAINTIFF AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 14, 2024, at 10:00 a.m., or as soon

thereafter as the matter may be heard in Courtroom 4, of the above entitled court, located at

450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, Defendants Contra

Costa County and Sophia Webb[1] will, and hereby do, move this Court for an order under Federal Rules of Civil Procedure 12(b)(6) to dismiss all claims for relief asserted in the second amended complaint, ECF 77, because Plaintiff has failed to state a claim upon which relief can be granted.  As set forth below, the County and Defendant Webb are immune from both state and federal claims, federal procedure bars this action, and Plaintiff did not allege facts sufficient to state a cause of action against the moving defendants.

This motion is supported by this notice, the memorandum of points and authorities, a request for judicial notice, and all the papers and records on file in this action, and such other materials as may be submitted at or before the hearing on this motion.


DATED: October 4, 2024         THOMAS L. GEIGER
                               COUNTY COUNSEL


                               By: _____/s/ Jason W. Mauck_____
                                   JASON W. MAUCK
                                   Deputy County Counsel
                                   Attorneys for Defendants
                                   CONTRA COSTA COUNTY and
                                   SOPHIA WEBB

---

[1] As of the filing of this motion, defendant Munisha Vohra has not been served.

DEFENDANTS CONTRA COSTA COUNTY AND SOPHIA WEBB'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - Case No. 3:22-cv-06026 VC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table of Contents

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL ALLEGATIONS ............................................................... 1

III.  ARGUMENT..................................................................................... 5

    A.    The State Claims Are Barred By Applicable Law .......................... 6

        1.    The County Can Only Be Sued Pursuant To Statute ............ 6

        2.    The County Cannot Be Sued For Negligent Supervision ..... 6

        3.    California Government Code Section 820.2 ......................... 6

        4.    California Government Code Section 821.6 ......................... 8

        5.    No Duty Has Been Pled To Support A Negligence Cause Of Action ................................................................................. 9

    B.    The State Law Claims Are Inadequately Pled................................. 10

        1.    There Is No Common Law Claim For "False Representations" ......... 10

        2.    The Complaint Alleges No Supervisorial Acts By Defendant Webb ................................................................................. 11

        3.    Plaintiff Has Failed To Allege Any Damages Or Causation With Respect To Any Specific Foster Home ....................... 12

    C.    Plaintiff Cannot Overcome The Federal Bars To Her Claim ........... 13

        1.    This Entire Matter Is Barred By The *Rooker-Feldman* Doctrine........ 13

        2.    The Domestic Relations Exception Allows This Court To Deny Jurisdiction ................................................................ 15

        3.    Defendant Webb Is Immune From Suit ............................. 16

    D.    Constitutional Claims ................................................................. 17

        1.    Plaintiff's Claims Related To A Special Relationship Under The Fourteenth Amendment Do Not Reflect Deliberate Indifference ....... 17

        2.    There Is No Constitutional Right To Be Placed With Family In Foster  Care................................................................. 18

        3.    ██████bb Had Ample Basis To Remove ██████ From Her Home ................................ ................... 19

        4.    No Fourth Or Eight Amendment Rights Have Been Pled ............ 20

    E.    Plaintiff Has Not Stated A Claim For Any *Monell* Violation ....................... 21

DEFENDANT CONTRA COSTA COUNTY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - Case No. 3:22-cv-06026 VC

i

1.     No Constitutional Deprivation Has Been Pled.....................................23

2.     No Policy Or Procedure Has Been Adequately Pled ..........................23

IV.     CONCLUSION........................................................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

<u>CASES</u>

*AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012)..................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................6

*Backlund v. Barnhart*, 778 F.2d 1386 (9th Cir. 1985).......................................18

*Bassi v. Bassi*, 101 Cal. App. 5th 1080, 321 Cal. Rptr. 3d 1, 19 (2024) ...............................11

*Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ................................ 22, 25

*Becerra v. Cty. of Santa Cruz*, 68 Cal. App. 4th 1450 (1998)...................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................5

*Beltran v. Santa Clara Cnty.*, 514 F.3d 906 (9th Cir. 2008) ...................................17

*Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003)..........................................14

*Bolden v. Richmond Police Dep't*, No. 23-cv-03006-LB, 2023 U.S. Dist. LEXIS 139888 (N.D. Cal. Aug. 10, 2023) .......................................24

*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) ..........................19

*Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764 (2011) ......................................10

*Christina C. v. Cty. of Orange*, 220 Cal. App. 4th 1371 (2013).................................7

*Clarke v. Upton*, 2009 U.S. Dist. LEXIS 44045 (E.D. Cal. May 26, 2009) ..........................19

*Coats v. Woods*, 819 F.2d 236 (9th Cir. 1987) ...............................................15

*Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012).............................................14

*Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 744 F. Supp. 2d 1178 (D. Kan. 2010).......21

*D.B. v. Brewer*, 2017 U.S. Dist. LEXIS 98656 (C.D. Cal. June 26, 2017) ..........................21

*D.R. v. Contra Costa Cty. CA*, No. 19-cv-07152-MMC, 2024 U.S. Dist. LEXIS 71158 (N.D. Cal. Apr. 18, 2024) .......................................24

*D.R. v. Contra Costa Cty.*, 2020 U.S. Dist. LEXIS 168898 (N.D. Cal. Sep. 15, 2020)..........19

*Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026 (9th Cir. 2001) ..........................13

*D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210 ..............................11

*Doe v. United States Youth Soccer Ass'n, Inc.*, 8 Cal. App. 5th 1118 (2017)........................9

*Eastburn v. Regional Fire Prot. Authority*, 31 Cal. 4th 1175 (2003)................................6

Federal Rule of Civil Procedure 8(a)(2) ....................................................5

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT CONTRA COSTA COUNTY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - Case No. 3:22-cv-06026 VC

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001)..................................................20

*Gabrielle A. v. Cty. of Orange*, 10 Cal. App. 5th 1268 (2017)............................ 7, 8

*Haggis v. City of Los Angeles*, 22 Cal. 4th 490 (2000) ........................................6

*Hancock v. Miller*, 2020 U.S. Dist. LEXIS 53755 (M.D. Tenn. Mar. 27, 2020) ...................21

*Henriquez v. City of L.A.*, No. CV 10-3072 AJW, 2012 U.S. Dist. LEXIS 208346
    (C.D. Cal. July 12, 2012) .................................................................6

*Hudson v. Palmer*, 468 U.S. 517 (1984)...................................................21

*In re B.D.*, 35 Cal. App. 5th 803 (2019) .................................................25

*In re Johnny S.*, 40 Cal. App. 4th 969 (1995) ...........................................13

*Ingraham v. Wright*, 430 U.S. 651 n.40 (1977)............................................21

*Jacqueline T. v. Alameda Cty. Child Protective Servs.*, 155 Cal. App. 4th 456 (2007)............9

*Jenkins v. Cty. of Orange*, 212 Cal. App. 3d 278 (1989) .................................9

*Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004) .................................14

*Leon v. Cty. of Riverside*, 14 Cal. 5th 910 (2023) .................................... 8, 9

*Lipscomb by and Through DeFehr v. Simmons*, 962 F.2d 1374 (9th Cir. 1992) ...................19

*Lopez v. Cty. of L.A.*, 2015 U.S. Dist. LEXIS 82918 (C.D. Cal. June 25, 2015) ...................6

*Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154 (9th Cir. 1987)...............16

*Miller v. Cal. Dep't of Soc. Servs.*, 355 F.3d 1172 (9th Cir. 2004)........................11

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ..................................21

*Mortimer v. Baca*, 594 F.3d 714 (9th Cir. 2010) .........................................22

*Ortega v. Sacramento County Dept. of Health & Human Services*, 161 Cal. App. 4th
    713 (2008)..............................................................................7

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) ........................................23

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) ...........................................24

*Plumeau v. Sch. Dist. No. 40 Cnty. Of Yamhill*, 130 F.3d 432 (9th Cir. 1997)...............22

*Quigley v. Garden Valley Fire Prot. Dist.*, 7 Cal. 5th 798 (2019) .........................8

*Ragan v. County of Humboldt HHS*, 2017 U.S. Dist. LEXIS 31560
    (N.D. Cal. Mar. 6, 2017)...............................................................14

*Resendiz v. Cty. of Monterey*, No. 14-CV-05495-LHK, 2015 U.S. Dist. LEXIS 86034
    (N.D. Cal. June 30, 2015) .............................................................12

*Rhodes v. Gordon*, 2013 U.S. Dist. LEXIS 100813 (C.D. Cal. July 16, 2013) ...................... 14

*Rieman v. Vazquez*, No. 22-56054, 2024 U.S. App. LEXIS 5252 (9th Cir. Mar. 5, 2024) ..... 16

*Safapou v. Marin Cty. of Cal.*, No. 17-cv-07042-JSC, 2018 U.S. Dist. LEXIS 220163
     (N.D. Cal. Jan. 23, 2018) ............................................................................. 15

*Starr v. Baca*, 652 F.3d 1203 (9th Cir. 2011) ...................................................... 22

*Sweiha v. Cty. of Alameda*, 19-cv-03098-LB, 2019 U.S. Dist. LEXIS 170552
     (N.D. Cal. Oct. 1, 2019) ............................................................................. 24

*Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 845 (9th Cir. 2010) ....................... 18

*Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833 (9th Cir. 2010) ........................... 17

*Tauscher v. Hanshew*, No. 23-cv-03776-TSH, 2023 U.S. Dist. LEXIS 172202
     (N.D. Cal. Aug. 7, 2023) ........................................................................ 15, 16

*Turner v. Cty. of Washoe*, No. 3:23-cv-00407-ART-CSD, 2024 U.S. Dist. LEXIS
     147152 (D. Nev. Aug. 19, 2024) ................................................................... 14

*United States v. Brown*, 582 F.2d 197 (2d Cir. 1978) ............................................ 19

*United States v. Dupuy*, 760 F.2d 1492 n.5 (9th Cir. 1985) ...................................... 19

*Walton v. Cty. of Sutter*, No. 2:18-cv-0080 TLN DB PS, 2021 U.S. Dist. LEXIS
     148807 (E.D. Cal. Aug. 9, 2021) .................................................................. 19

*Worldwide Church of God v. McNair*, 805 F.2d 888 (9th Cir. 1986) .................................. 13

<u>STATUTES</u>

42 United States Code Section 1983 ............................................................ 15, 17, 21

California Code of Civil Procedure Section 47(b) .................................................. 10

California Code of Civil Procedure Section 1714(a) .................................................. 9

California Family Code Section 7906 ............................................................. 13

California Family Code Section 7908 ............................................................. 13

California Government Code Section 815(a) .......................................................... 6

California Government Code Section 815.2 ......................................................... 7, 8

California Government Code Section 820.2 ......................................................... 7, 8

California Government Code Section 821.6 ........................................................... 8

Texas Family Code Section 162.102 .............................................................. 13

Welfare and Institutions Code Section 727.1 ....................................................... 13

## I.     INTRODUCTION

Plaintiff's second amended complaint (ECF 76, "SAC") is a disordered cobble of allegations that fails to state the necessary facts to support any cause of action. Instead, the SAC relies on a few isolated incidents and fills in the basis for the claims with conclusions of fact and law. Plaintiff fails to simply identify cognizable specific duties and rights in support of her various claims.

The crux of the SAC – as it pertains to Contra Costa County ("County") and defendant Webb – is predicated on three factual nuclei related to Defendant Webb: that she allegedly did not monitor Plaintiff over the years (at unspecified times while in unspecified foster homes, despite having regular 30 minute visits with Plaintiff), that she changed Plaintiff's mood medication, and that she advocated for the termination of ███████ guardianship of Plaintiff – after ██████ had lost physical custody of Plaintiff. None of the associated claims are pled with the requisite specificity to state a cause of action. In any event, all the claims in the SAC are barred by various state and federal immunities and jurisdictional bars that Plaintiff cannot plead around. As this case has taken years to get off the ground, and Plaintiff is in possession of thousands of pages of documents – yet can still not present a viable claim, this matter should be dismissed with prejudice.

## II.    FACTUAL ALLEGATIONS[2]

Plaintiff was born in ██████ and her parents ██████████████████ ███████ years old. ¶¶20 – 21. Since that time, Plaintiff has been the subject of a dependency action, represented in the Juvenile Court by Pamela Gagliani. ¶57. After removal, ████████ ████████████████████████████████████████ ████████████ who resides ███████████████████ ¶¶22 – 23. Plaintiff was first assigned ██████████████████████████████████████████ who was, herself replaced by Defendants Vohra, and then Webb (¶27). Plaintiff alleges, without

---

[2] All "¶" references are to the SAC unless otherwise noted.

support, that it is common practice of DCFS that every dependency case is passed from one team of social workers and supervisors to another team of social workers and supervisors (this despite the fact that Plaintiff is only alleged to have had four social workers over the past 12 years). Further, a case worker might leave a case for various reasons, whereby another social worker would then step into the case. ¶25.

At some unspecified time after Plaintiff was removed from her parents, she was ███████████████████████████████████████████████████████. ¶28.

In ██████████████████████████████████████████████████████████████. During this time, Defendant Vohra was the social worker overseeing Plaintiff's case. ¶29. Plaintiff alleges that, while at ██████████████, there were numerous instances where Plaintiff ████████████████████████. Plaintiff's ██████████ due to the stress at ████████████████ became so apparent, she started to ████████████████████████. ¶30. Plaintiff's legal guardian, █████, raised numerous concerns with the school about what was happening to Plaintiff, eventually deciding to leave ██████████████████. ¶31. Plaintiff was thereafter transferred to ████████████████████████████████. ¶32. The move proved a success and Plaintiff flourished while at ██████████████████ stopped ██████████ ████████████████████████" ¶33.

Plaintiff contends that Defendant Vohra and others at DCFS had an animus towards █████, and perhaps a desire to cover up the negligent care of Plaintiff on the part of Defendants themselves. ¶34. (This despite the fact that Plaintiff was residing with ████ at the time.) Plaintiff contends that Defendant Vohra and others at DCFS made false and incorrect accusations against ████ and Plaintiff, and omitted important information in their communications with others at DCFS, law enforcement and judicial authorities (the specificities of which are unenumerated). *Id.*

On ████████████████████████████████████████████████, attended by ██████████████████ Defendant

1  Vohra.  The team feedback was positive.  ¶35.  However, during the ███████, Vohra

2  ████████████████████████████████████████████████████████████████

3  ████████████.  According to Plaintiff's Counselor, ██████████████████

4  ████████████████████████████████████████████████████

5  ███████████████  Notably, ███████████████████████████

6  ██████████████████████████████████████████

7  ███████████████████████████████████████ – which is helpful

8  for ███████.  ¶36.  In response to Vohra's ███████ Counselor explained ████████

9  ████████████████████████████████████████████████████████

10  █████████████████████████████████████.  ¶37.  Vohra stated that ████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ███████████████████████  relayed to Vohra.[3]  *Id*.

14  ███████████████████, Plaintiff had been removed from ████ home. ████

15  alleged that Defendant Vohra had reported ██████████████████████████

16  ████████████████████████████████████████████████████████

17  ███████████████  ¶39.  As part of this report to the Court, DCFS staff reported that ████

18  ████████████████████████████████████████████████████████

19  ██████████████████████████████.  ¶40.  DCFS also reported claims such as

20  ████████████████████████████████████████████████████████

21  █████████████████████████.  After a ███████████████████████,

22  DCFS accused a resident of ████████ and Plaintiff's home of being involved in ████████

23  (which Plaintiffs claim was not true, despite not disputing the drive by shooting story).  ¶41.

24  Defendant Vohra also conducted a ██████████████████████████████

25  ████████████████████████████████████████████████████

26  ███████████████████.  ¶42.

27  _____

28  [3] Plaintiff does not deny that ████████ failed to inform Vohra of the incident.

1    Plaintiff contends that Vohra promised Plaintiff she could go home if she ▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮ home.  Wanting to go home, the eight-year-old

3  Plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮▮ gave it to Vohra.  Plaintiff

4  has explicitly stated, on numerous counts, that the statement she ▮▮▮ was false and was only

5  ▮▮▮▮▮ a means of trying to go home, as promised by Vohra.  ¶43.  There is no allegation

6  that the statement was used in Court.

7    In or around the summer of ▮▮▮, Plaintiff's case worker changed to Defendant Webb.

8  ¶44.  Webb attended ▮▮▮▮▮▮▮▮▮▮, which were soon cancelled due to

9  Plaintiff's foster mother's failure to attend.  Webb knew or should have known the

10  uncooperative behavior of Plaintiff's foster mother during this time as Webb had regular

11  ▮▮▮▮▮▮ with Plaintiff.  ¶45.  Webb allegedly never inquired as to what Plaintiff

12  was enduring at the facilities she was in and out of and showed a complete disregard for

13  Plaintiff's general well-being.  ¶46.  For example, Plaintiff alleges that, on or about ▮▮▮

14  ▮▮▮, it was discovered that Plaintiff had been ▮▮▮▮▮▮▮▮ in a foster home,

15  which ▮▮▮▮▮.  ¶47.  Plaintiff was unable to show ▮▮▮▮▮▮▮▮

16  because her foster parents had intentionally destroyed the ▮▮▮▮▮▮ with a

17  rock.  *Id*.  However, the allegations tacitly admit that the social workers were made aware of

18  the incident.

19    On or about ▮▮▮▮▮▮, at the urging of Plaintiff's social workers, Plaintiff's

20  foster parent took Plaintiff to a ▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮.  Plaintiff's ▮▮▮▮▮▮▮, disagreed that Plaintiff

22  needed a ▮▮▮▮▮.  ¶49.  Defendant Webb sought a second opinion (¶50) and on or

23  about ▮▮▮▮▮, a second ▮▮▮▮▮, changed Plaintiff's

24  prescription to ▮▮▮▮▮ (¶51).  Plaintiff had alleged ▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮ and her behavior ▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮.  ¶51.  Months later Plaintiff's therapist emailed Defendant Webb on

27  ▮▮▮▮▮ to emphasize the need for Plaintiff to have consistency ▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮ while getting transferred between foster homes.  ¶52.

1    On ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ reported to Webb that

2    Plaintiff had informed her of being deprived of food in her foster home.  Webb allegedly

3    failed to act on the accusation.  ¶53

4         At some point after March 2016, Webb moved the Juvenile Court for the termination of

5    ▮▮▮▮▮ legal guardianship and family reunification services (¶54),  although no reason for

6    seeking the order is alleged.  Plaintiffs claim that there were falsities in the report and petition

7    by Defendants (but do not state what those allegedly false statements were).  Based on the

8    report, the court suspended visits with ▮▮▮, removed her educational rights to Plaintiff, and

9    denied her rights to participate in ▮▮▮▮▮▮▮▮▮.  Additionally, the court denied

10   any future relative placements for Plaintiff without a court order.  *Id.*  In ▮▮▮▮▮▮▮,

11   Plaintiff (whom was ▮▮▮▮ old at the time) was sent to a Behavioral Health Center in the

12   State of Texas, ▮▮▮▮▮.  ¶55.  According to Plaintiff, ▮▮▮▮ was notorious for

13   being an unsafe mental health institution where physical abuse and neglect occurred. While at

14   ▮▮▮▮, Plaintiff was repeatedly abused, did not meet with a therapist or psychiatrist, and

15   deteriorated rapidly. ¶56.

16        In the latter part of 2018, Plaintiff returned to the State of California.  ¶78.  Plaintiff

17   was eventually placed in a group home in or near ▮▮▮▮▮▮▮.  ¶80.  As a result of

18   the above-described neglect, abuse, and trauma, Plaintiff's dependency case was dismissed

19   and Plaintiff ended up in juvenile delinquent court.  ¶81.

20   **III.    ARGUMENT**

21        The Federal Rules of Civil Procedure require a complaint to contain "a short and

22   plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

23   8(a)(2).  However, "a Plaintiff's obligation to provide the grounds of his entitlement to relief

24   requires more than labels and conclusions, and a formulaic recitation of the elements of a

25   cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations

26   and quotations omitted).  A plaintiff must allege "enough facts to state a claim to relief that is

27   plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads

28   //

---

DEFENDANT CONTRA COSTA COUNTY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - Case No.
3:22-cv-06026 VC                                                                              5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.   The State Claims are Barred By Applicable Law

#### 1.   The County Can Only Be Sued Pursuant to Statute

In the first and third claims, Plaintiff alleges a negligence claim against the County. However, common law negligence claims cannot be maintained against a public entity. "Except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Gov't Code § 815(a); *see also Eastburn v. Regional Fire Prot. Authority*, 31 Cal. 4th 1175, 1183 (2003). To state a cause of action against the County, Plaintiffs must identify a specific statute and show that it imposes a mandatory duty on the part of the County. *Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498-99 (2000). "Moreover, the Plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity." *Lopez v. Cty. of L.A.*, No. CV 15-01745 MMM (MANx), 2015 U.S. Dist. LEXIS 82918, at *6 (C.D. Cal. June 25, 2015) (internal citations omitted.) Therefore, all common law causes of action in the SAC cannot be maintained against the County.

#### 2.   The County Cannot Be Sued for Negligent Supervision

In addition to the above, Plaintiff's third claim for "Negligent Supervision" is directed towards all defendants, but state law prohibits any such claim against the County. "Applying California law, the Ninth Circuit and district courts have repeatedly held that a public entity cannot be directly liable for negligent hiring, retention, or supervision." *Henriquez v. City of L.A.*, No. CV 10-3072 AJW, 2012 U.S. Dist. LEXIS 208346, at *5 (C.D. Cal. July 12, 2012)(collecting sources). Hence, the third claim for relief is, again, subject to dismissal.

#### 3.   California Government Code Section 820.2

Through the claims of the SAC, Plaintiff alleges that Webb violated state law by being negligent in making false representations and omitting material facts in reporting to the state Juvenile Court, in order to take "Plaintiff away from her family," and by negligently

//

---

1    supervising Doe Defendants.  All of the alleged acts were taken in the scope of Defendant

2    Webb's employment as a social worker and are subject to state law immunities.

3          Pursuant to state law, "[e]xcept as otherwise provided by statute, a public employee is

4    not liable for an injury resulting from his act or omission where the act or omission was the

5    result of the exercise of the discretion vested in him, whether or not such discretion be

6    abused."  Cal. Gov't Code § 820.2.[4]  "The immunity provided by these statutes is broad, and

7    includes immunity for social workers' removal and placement decisions.  Immunity applies

8    even to 'lousy' decisions in which the worker abuses his or her discretion, including decisions

9    based on 'woefully inadequate information.'"  *Gabrielle A. v. Cty. of Orange*, 10 Cal. App.

10   5th 1268, 1285 (2017).  "Courts have determined immunity applies to such decisions no

11   matter how horrible the outcome, including a situation where a social worker returned a child

12   to a father, who stabbed the child in the heart and lungs shortly thereafter.  *Id*. referencing

13   *Ortega v. Sacramento County Dept. of Health & Human Services*, 161 Cal. App. 4th 713,

14   715–716, 718 (2008).  "Simply put, even assuming arguendo [a social worker] abused its

15   discretion by acting in an arrogant or punitive manner or with undue consideration for

16   monitoring costs, the immunity provided in Government Code section 820.2 expressly applies

17   'whether or not such discretion is abused.' Section 820.2 specifies no exception for malice.

18   The same wide discretion applies even [ ] social workers were grossly incorrect in concluding

19   mother violated the [a conditional release and supervision] agreement."  *Christina C. v. Cty. of*

20   *Orange*, 220 Cal. App. 4th 1371, 1381 (2013) citing *Ortega*, 161 Cal. App. 4th at 733.

21         This immunity has been directly applied to both the decision to remove a child and the

22   selection of a foster home.  "[T]he choice of a foster home for a dependent child is a complex

23   task requiring the consideration and balancing of many factors to achieve statutory objectives.

24   [. . .] The required choices and judgments resulted in a carefully considered decision by the

25   proper authorities in a coordinate branch of government. For these reasons, the foster home

26   placement was a discretionary decision for which the social workers (pursuant to Gov. Code, §

27   _____

28   [4] As to the County "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Cal. Gov't Code § 815.2.

820.2) and the County (pursuant to Gov. Code, § 815.2) are entitled to immunity from tort liability." *Becerra v. Cty. of Santa Cruz*, 68 Cal. App. 4th 1450, 1464 (1998). "The law does not grant immunity to social workers because it believes they are perfect, or should never be questioned or called to account for their actions. The law grants them immunity because otherwise they would simply not be able to do their jobs. If every time they removed a child, based on the information they had at the time, they had to fear a lawsuit if they were later proved wrong, the system would be paralyzed and children would be in danger." *Gabrielle A.,* 10 Cal. App. 5th at 1287.

The decision to place Plaintiff in any and all foster homes is subject to state law immunity. The removal of Plaintiff from any foster home, including her grandmother's, is also the type of discretionary act protected by 820.2. Even if the decisions referenced were wrong, based on poor reasoning, or even done with malice, there is no state law claim pled against Defendant Webb that does not fall under the broad immunity offered by section 820.2.

### 4.    California Government Code Section 821.6

"[A] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6.

> Section 821.6 is [ ] aptly characterized as providing immunity against liability for claims of injury based on tortious or wrongful prosecution. The immunity is narrow in the sense that it applies only if the conduct that allegedly caused the plaintiff's injuries was the institution or prosecution of an official proceeding. But this immunity is broad in the sense that it applies to every such tort claim, whether formally labeled as a claim for malicious prosecution or not. And where it applies, it is absolute, meaning that "the immunity is not conditioned on a showing that the defendant acted in a reasonable or procedurally proper manner, or any similar requirement."

*Leon v. Cty. of Riverside*, 14 Cal. 5th 910, 922 (2023), citing *Quigley v. Garden Valley Fire Prot. Dist.*, 7 Cal. 5th 798, 809 (2019).

//

In reviewing a similar fact pattern to that here, *Jenkins v. Cty. of Orange*, 212 Cal. App. 3d 278 (1989), found that 821.6 immunity applied to the failure to use due care in investigating child abuse reports, and a social worker's refusal to consider all of the evidence and thereby misrepresenting information to the juvenile court was also entitled to immunity. *Id.* at 283, overruled on other grounds in *Leon*, 14 Cal. 5th at 930.  Since the acts in *Jenkins* were done within the scope of employment, the social workers were immune from liability as alleged.  *Id.*  Indeed, "section 821.6 covers not just the act of filing a criminal complaint, but also other prosecutorial or quasi-prosecutorial functions such as weighing and presenting evidence when rendering a decision on whether to proceed with litigation."  *Jacqueline T. v. Alameda Cty. Child Protective Servs.*, 155 Cal. App. 4th 456, 467 (2007).  As with the above immunity, the few actions allegedly taken by Defendant Webb in the SAC (that are specified beyond bare conclusions), were all taken in the course of the long running dependency action in the state Juvenile Court.  Accordingly, whatever evidence was or was not presented to the court, is subject to this immunity.

### 5.    No Duty has Been Pled to Support a Negligence Cause of Action

Plaintiff's first claim is for negligence and simply states that "Defendants owed duties to Plaintiff" and "Defendants breached their duties to Plaintiff".  ECF ¶¶84 – 85.  This is not sufficient to plead negligence.  "In order to succeed in an action for negligence, the plaintiff must establish that the defendant owed him or her a legal duty, the defendant breached that duty, and the breach proximately caused his or her injuries."  *Doe v. United States Youth Soccer Ass'n, Inc.*, 8 Cal. App. 5th 1118, 1128 (2017).   "The first element, duty, "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship [,]" and is a question of law.  *Id.*  Generally, everyone in California is responsible for an injury caused by his or her lack of ordinary care or skill in the management of his or her property or person. Cal. Civ. Code, § 1714(a).

> [S]everal considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the

connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."  As we have also explained, however, in the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where "clearly supported by public policy."

*Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011)

In this matter, Plaintiff's complete lack of specificity makes it impossible to judge whether a duty exists, the extent of that duty, as to whom the duty is applied, and to whom the duty is owed, the risks at issue, or moral blame available.  The negligence cause of action is, therefore, legally insufficient and must be dismissed.

### B.    The State Law Claims are Inadequately Pled

#### 1.    There is no Common Law Claim for "False Representations"

Plaintiff's second claim is for "false representations" made to state court.  Within the claim no specific false representation claim is alleged, only that "Defendants made misrepresentations to the state court, and made omitted material facts which should have been presented to the state court. This was done in order to further the agenda of taking Plaintiff away from her family."  SAC ¶89.  These omissions "were a substantial factor in causing the state court an order taking Plaintiff from her family."  *Id*.  Setting aside the fact that the decision to remove a foster child and foster placement decisions are immune from prosecution under state law, the allegations are insufficient to state a cause of action.

First, there is no state common law claim for "false representations to state court," so Defendant Webb cannot properly respond to the elements of the claim.  Second, reports filed with the Court are subject to California's litigation privilege.  California Code of Civil Procedure Section 47(b) bars a civil action for damages based on statements made in any judicial proceeding.  "Section 47 establishes a privilege that bars liability in tort for the making of certain statements.  The litigation privilege serves broad goals of guaranteeing

access to the judicial process, promoting the zealous representation by counsel of their clients, and reinforcing the traditional function of the trial as the engine for the determination of truth. It affords litigants the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Bassi v. Bassi*, 101 Cal. App. 5th 1080, 1103, 321 Cal. Rptr. 3d 1, 19 (2024) (internal citations and quotations omitted).  Finally, even if there was a common law claim for misrepresentations that was not covered by the applicable state law immunity, the Plaintiffs have not stated what false statements were made to the Court, how those statements affected the Plaintiff or the court's decision, or what right the Plaintiff had that was impacted by the statements.  The claim is, therefore, subject to dismissal.

### 2.    The Complaint Alleges No Supervisorial Acts by Defendant Webb

Plaintiff's third claim concerns allegations that decisions within DCFS were made by a team of supervisors, managers, and, sometimes, the director.  SAC ¶94.  From there, Plaintiff alleges that she was "banished" to an out-of-state mental institution and that resulted in harm as a result of her care there and separation from her family.  The allegations are conclusory and do not overcome the above discussion.  As additionally stated above, the placement decisions of social workers for children in dependency proceedings are subject to various state law immunities.  Further, there is no duty to ensure that a ward of the Court has contact with her family.  Indeed, there is no federal or state right to familial association when a child is the ward of the Court.  *Miller v. Cal. Dep't of Soc. Servs.*, 355 F.3d 1172, 1175 (9th Cir. 2004).

Further, "a negligent supervision claim depends, in part, on a showing that the risk of harm was reasonably foreseeable.  Foreseeability is determined in light of all the circumstances and does not require prior identical events or injuries.  It is not necessary to prove that the very injury which occurred must have been foreseeable by the school authorities.  Their negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of adequate safeguards." *D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal. App. 5th 210, 229 (cleaned up).  Plaintiff has not alleged any further duties that were breached by any supervisors that led to injury to Plaintiff beyond conclusions of law and fact.  "Merely alleging

1  that Defendants had a duty to hire, supervise, train, and retain employees and/or agents so that

2  employees and/or agents refrain from the conduct and/or omissions alleged herein and that

3  Defendants breached this duty, is insufficient. While Plaintiffs need not prove the case on the

4  pleadings, Plaintiffs must allege more than conclusions [,] and a lack of access to evidence

5  cannot save implausible claims." *Resendiz v. Cty. of Monterey*, No. 14-CV-05495-LHK, 2015

6  U.S. Dist. LEXIS 86034, at *24-25 (N.D. Cal. June 30, 2015) (internal citations and

7  quotations omitted). Without further specific allegations that Plaintiff suffered the type of

8  foreseeable harm that should have been known to any supervisor, she has not plausibly shown

9  an entitlement to relief.

> ### 3. Plaintiff Has Failed to Allege Any Damages or Causation with Respect to Any Specific Foster Home

11  As a general issue with the SAC, Plaintiff has not alleged that the County was actually

12  on notice of the potential harm that Plaintiff allegedly suffered a the hands of any of the foster

13  homes. The SAC contains buried passing references to multiple foster home placements, and

14  conclusions regarding damages as a result of those placements (*See e.g.* ¶52), but Plaintiff

15  does not state that the County was aware that the placements were dangerous or that they were

16  informed of the danger. For example, Plaintiff asserts that she suffered physical assaults,

17  emotional abuse, and physical restraint at ██████. Plaintiff concludes that ██████ was

18  "notorious" for abuse and neglect, but fails to tie that alleged reputation to specific instances

19  of abuse or neglect or the injuries that she allegedly suffered were foreseeable. According to

20  the organization, "██████ operates a comprehensive national network ██████,

21  ██████████████████████ that positively impact the

22  lives of tens of thousands of children, adults – and their families – every year." And that they

23  have more than 7,000 employees working across the nation.[5] The fact is ██████ is a large

24  operation and Plaintiff's generic, non-descript allegations do not amount to notice of the

25  //

26

27  _____

28  [5] ████████████████████████████

dangerous condition at the facility where Plaintiff was placed, or that she suffered the type of harm that was a known risk at that specific facility.

With respect to the allegation concerning out of state placements, state law allows for the placement of children at out of state facilities.  "A court having jurisdiction to place children adjudged wards of the court may place a ward in an out-of-state facility [. . .] pursuant to Section 727.1 of the Welfare and Institutions Code and Article 6 of the Interstate Compact on the Placement of Children and shall retain jurisdiction as provided in Article 5 of the compact."  Cal. Fam. Code § 7908.  "Any requirements for visitation, inspection, or supervision of children, homes, institutions, or other agencies in another party state which may apply under the law of this state shall be deemed to be met if performed pursuant to an agreement entered into by appropriate officers or agencies of this state or a subdivision thereof as contemplated by paragraph (b) of Article 5 of the Interstate Compact on the Placement of Children."  Cal. Fam. Code § 7906.  "California and Texas have signed the ICPC and enacted statutes codifying its provisions."  *In re Johnny S.*, 40 Cal. App. 4th 969, 974 (1995); *see also* Tex. Fam. Code § 162.102.

The conclusory and shallow allegations related to the alleged multiple foster home placements are insufficient to impose any prior to contemporaneous knowledge on the part of any Defendant, and any state law claim related to the placement in foster homes are insufficient.

### C.   Plaintiff Cannot Overcome the Federal Bars to Her Claim

#### 1.   This Entire Matter is Barred by the *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  "The purpose of the doctrine is to protect state judgments from collateral federal attack."  *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).  The doctrine applies even when the challenge to the state court decision involves federal constitutional issues.  *Worldwide Church*

*of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986).  Thus, "[a] plaintiff may not avoid the *Rooker-Feldman* bar by styling his attack on the state court's ruling as a civil rights action." *Rhodes v. Gordon*, 2013 U.S. Dist. LEXIS 100813, *32-33 (C.D. Cal. July 16, 2013) (citing *Worldwide Church*, 805 F.2d at 893 n.4).  The bar extends to any issues that are "inextricably intertwined" with the state court judgment.  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).  A claim is "inextricably intertwined" with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it," i.e., "[w]here federal relief can only be predicated upon a conviction that the state court was wrong."  *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (citations omitted).  Essentially, claims are inextricably intertwined where "the relief requested in the federal action would effectively reverse the state court decision or void its ruling."  *Id.*

The entirety of this case is subject to the *Rooker-Feldman* bar.  All Plaintiffs' claims are predicated on alleged lapses in the information provided to the Juvenile Court (*See e.g.* ¶54) and Court placement decisions (¶73).  However, false information presented to a state court is inextricably intertwined with a state court decision and is not reviewable by this Court even when stylized as a civil rights complaint.  The fact is, reports of social workers made to the Court cannot be separated from the final decisions of the state Court, and entertaining any argument over the state court decision would undercut its jurisdiction and its application of state law.  *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).  This bar to action has been upheld across the Ninth Circuit.  *Turner v. Cty. of Washoe*, No. 3:23-cv-00407-ART-CSD, 2024 U.S. Dist. LEXIS 147152, at *15 (D. Nev. Aug. 19, 2024) (collecting decisions).

*Ragan v. County of Humboldt HHS*, 2017 U.S. Dist. LEXIS 31560 (N.D. Cal. Mar. 6, 2017) is on point.  *Ragan* concerned allegations of fabricated evidence presented to the court and the failure to provide exculpatory evidence throughout the dependency proceedings by Humboldt County's child services department.  The Court found the federal court allegations raised issues that were "inextricably intertwined" with the state court dependency proceedings. "While there is an exception to the *Rooker-Feldman* doctrine for allegations of extrinsic fraud, Plaintiffs do not appear to allege extrinsic fraud here.  Extrinsic fraud is 'conduct which

prevents a party from presenting his claim in court.'" *Id*. at *14-15.  In this case there is no allegation that the Plaintiff, as a represented party to the underlying action, was prevented from presenting her arguments to the Juvenile Court or prevented from offering information concerning the alleged abuses at foster homes.  Indeed, this matter was continually in front of the Juvenile Court for every year mentioned in the SAC, and all of Plaintiffs' theories of liability are based on what transpired in state court.  The allegations over Plaintiff's placement in ███████, that she was removed from her parents at all, or that any Court orders from the state Juvenile Court (as noted in the SAC) were wrongfully decided are inextricably intertwined with the long-standing state court proceeding and therefore subject to the *Rooker-Feldman* bar.

### 2.   The Domestic Relations Exception Allows this Court to Deny Jurisdiction

"[U]nder the domestic relations exception federal district courts lack jurisdiction over claims regarding child custody issues, which are exclusively matters of state law.  Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters.  In this circuit, federal courts refuse jurisdiction if the primary issue concerns child custody issues or the status of parent and child or husband and wife."  *Safapou v. Marin Cty. of Cal.*, No. 17-cv-07042-JSC, 2018 U.S. Dist. LEXIS 220163, at *13-14 (N.D. Cal. Jan. 23, 2018) (internal citations omitted).  While it is mostly applied to diversity jurisdiction, where a federal question is presented, federal courts can decline "to hear disputes which would deeply involve them in adjudicating domestic matters.  In this circuit, federal courts refuse jurisdiction if the primary issue concerns child custody issues or the status of parent and child or husband and wife."  *Tauscher v. Hanshew*, No. 23-cv-03776-TSH, 2023 U.S. Dist. LEXIS 172202, at *6-7 (N.D. Cal. Aug. 7, 2023)(internal citations omitted).

Applicable to this matter is *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) wherein the plaintiff, invoking 42 U.S.C. § 1983, alleged that her ex-husband and others involved in state court proceedings had wrongfully deprived her of custody of her children.  Defendants

included most of the officers, attorneys, and experts associated with the matter.  Plaintiff specifically alleged that defendants deprived her of child custody, thereby depriving her of a liberty interest, in violation of 42 U.S.C. §§ 1983.  However, because the action at its core implicated domestic relations issues, the Ninth Circuit affirmed the district court's decision to abstain from exercising jurisdiction.  *Id*. at 237; accord *Tauscher*, No. 23-cv-03776-TSH, 2023 U.S. Dist. LEXIS 172202, at \*7 (citing *Coats*).  Because this matter concerns child custody determinations by the state Juvenile Court, this Court should decline jurisdiction over any dispute regarding foster family placement of Plaintiff pursuant to the Domestic Relations Exception.

### 3. Defendant Webb is Immune from Suit

Social workers are absolutely immune from federal claims related to their role in prosecuting and maintaining dependency actions in the same manner as criminal prosecutors. This is because "[t]he social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit." *Meyers v. Contra Costa Cty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987).  Accordingly, "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Id*.  Courts have granted state actors "absolute immunity only for those functions that were critical to the judicial process itself, such as initiating a prosecution.  It therefore follows that social workers may enjoy absolute immunity from suit when they make discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." *Rieman v. Vazquez*, No. 22-56054, 2024 U.S. App. LEXIS 5252, at \*11 (9th Cir. Mar. 5, 2024).  "However, social workers 'are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to

discretionary decisions about whether to prosecute.'" *Id.* citing *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008). Taking the allegations as true in this case, there are no specific allegations as to false statement made by Defendant Webb to the Court. *See e.g.* ¶54. Without more to overcome the immunity of social workers in exercising their duties and making discretionary decisions, such as whether the alleged bruising warrants a report, Defendant Sullivan is immune from the federal claims.

### D.     Constitutional Claims

Plaintiff's claims under 42 U.S.C. §1983 are a conclusory mush of various alleged constitutional rights which are substantially similar to plaintiff's state law claims. Pulling the alleged violations from the claim, Plaintiff seems to argue that she had a special relationship under the Fourteenth Amendment and had a duty to protect her while in foster care; that she was entitled to psychological treatment; that Defendant Webb engaged in judicial deception and concealment of evidence by reporting to the Court that there was a gang member and child molester living in ▆▆▆ home with Plaintiff, and that there was a Fourth and Eighth Amendment violation when Plaintiff was transferred to ▆▆▆. As with the state law claims, the allegations are not supported by applicable law or pleadings.

#### 1.     Plaintiff's Claims related to a Special Relationship under the Fourteenth Amendment do Not Reflect Deliberate Indifference

"The Fourteenth Amendment substantive due process clause protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010). "To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions shock the conscience. Conduct that shocks the conscience is deliberate indifference to a known or so obvious as to imply knowledge of, danger. *Id.* at 844 (internal quotations and citations removed). "[T]he deliberate indifference standard, as applied to foster children, requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew

1    that inference or that a reasonable official would have been compelled to draw that inference."

2    *Id*. at 845.

3        In this instance, Plaintiff asserts being abused at the ███████ facility and hints at the

4    same at unknown and unspecified foster homes.  Yet she fails to allege that Defendant Webb

5    placed Plaintiff at ████████, that she – or any Defendant – knew, prior to placement, that

6    either was posed a serious risk of harm to Plaintiff.  Plaintiff only speculates and concludes,

7    for example, that Devereaux was "notorious" for being an unsafe mental institution, but offers

8    no substantive allegation that those facts were known prior to placement.

9        The only other specific allegation concerning the treatment of Plaintiff at foster homes

10   concerns a video, that no one reviewed, that was possibly sexual in nature.  Plaintiff undercuts

11   this claim by stating that she could not show any social workers.  SAC ¶47.  However, she

12   appears to have notified them.  Therefore, the only specific allegation with respect to any

13   foster home placement is inadequately pled and offers nothing concerning liability for the

14   failure to protect Plaintiff.  Plaintiff's allegations amount to speculation that the defendants

15   possibly knew that Plaintiff was harmed at subject placements, but offers nothing more to

16   demonstrate that they were aware and did nothing in response.   Without more proof,

17   allegations concerning the subjective knowledge of the defendants and more individualized

18   harm stated, Plaintiff has not met the pleading requirements for a failure to protect claim under

19   the Fourteenth Amendment.

20          **2.      There is no Constitutional Right to be placed with Family in Foster Care**

21          Part of Plaintiff's muddled Fourteenth Amendment Claim seems to be an assertion that

22   she had a right to remain with her grandmother, which is not correct.  Even if the grandmother

23   was a foster parent, she does "not enjoy the same constitutional protections that natural

24   parents do."  *Backlund v. Barnhart*, 778 F.2d 1386, 1389 (9th Cir. 1985).  "The existence of a

25   negative right to freedom from governmental interference, however, does not dictate the

26   recognition of an affirmative right on the part of foster children to be placed by the state with

27   relatives."  *Lipscomb by and Through DeFehr v. Simmons*, 962 F.2d 1374, 1378-79 (9th Cir.

28

---

DEFENDANT CONTRA COSTA COUNTY'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - Case No.
3:22-cv-06026 VC                                                                                    18

1992).  Accordingly, any assertion that Plaintiff had a right to reside with ███ is untenable and cannot be used to support any claim that Defendants violated the Constitution.

### 3.   ██████ b Had Ample Basis to Remove ███ from her Home

Even assuming that Plaintiff had a Fourteenth Amendment right to stay with her foster mother, and that the *Rooker-Feldman* or immunity claims do not bar this portion of the claim, the facts alleged provided ample basis to remove Plaintiff from ████ home.

"[T]o proceed on a judicial deception claim, a plaintiff must make (1) a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred.  If a plaintiff satisfies these requirements, the matter should go to trial.  Omissions, misstatements, or erroneous assumptions alone are not sufficient to support a claim of judicial deception."  *Walton v. Cty. of Sutter*, No. 2:18-cv-0080 TLN DB PS, 2021 U.S. Dist. LEXIS 148807, at *14 (E.D. Cal. Aug. 9, 2021) (internal citations and quotations omitted).  Therefore, Plaintiff's contention that some facts were omitted from reports to the Court is not judicial deception.

If Plaintiff is arguing a claim for the failure to turn over exculpatory evidence, *i.e.* information about the abuse she allegedly suffered, there is no requirement in civil proceedings to turn over such evidence.  *See Clarke v. Upton*, 2009 U.S. Dist. LEXIS 44045, *51-54 (E.D. Cal. May 26, 2009).   Assuming arguendo that the duty to turn over exculpatory information exists in civil actions or dependency proceedings, "under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the prosecution violates due process where it withholds from the accused material evidence favorable to the accused."  *D.R. v. Contra Costa Cty.*, 2020 U.S. Dist. LEXIS 168898, at *15-16 (N.D. Cal. Sep. 15, 2020).  However, "where the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a *Brady* violation by not bringing the evidence to the attention of the defense."  *United States v. Brown*, 582 F.2d 197, 200 (2d Cir. 1978); *see also United States v. Dupuy*, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) (citing *Brown*); *D.R.*, 2020 U.S. Dist. LEXIS 168898, at *15-16 (finding that plaintiff could have informed the court

DEFENDANT CONTRA COSTA COUNTY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - Case No. 3:22-cv-06026 VC

19

of the alleged exculpatory evidence).  In this matter, Plaintiff was represented by counsel, so it is not speculation to reasonably assume that Plaintiff's attorney could have easily informed the state dependency court of the conditions of the facilities where Plaintiff was placed or of Plaintiff's wellbeing.  Indeed, Plaintiff even alleges that her attorney assisted in removing Plaintiff from the home of ████████; meaning ████. had counsel able to represent her rights at the time of any alleged omissions.  SAC ¶61.

In any event, Plaintiff does not deny that there was a drive by shooting at the ████ home, someone had falsely called 911, the police had searched the home, and that ████ █████████████████████████████████████████.  *Id.* at ¶¶41 – 42.  Taken together this is more than enough to remove Plaintiff for her own safety.

#### 4.    No Fourth or Eight Amendment Rights Have Been Pled

Plaintiff claims that she was banished to an out of state mental institution and denied treatment, and that her placement in ████████ was a violation of the Fourth and Eighth Amendments.  In addition to being conclusory allegations, there are no Constitutional rights as alleged.

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  The temporal extent of how long a "seizure" lasts under the Fourth Amendment may a question, but not in this case.  *Fontana v. Haskin*, 262 F.3d 871, 879 (9th Cir. 2001) ("[T]he Fourth Amendment prohibition against unreasonable search and seizure continues to apply after an arrestee is in the custody of the arresting officers.")  There should be little doubt that a "seizure" under the Fourth Amendment does not continue past the point where Plaintiff was ruled a dependent of the Court, or sometime in 2008.  SAC ¶45.  By the time the Plaintiff arrived at ████████, she had been involved in the dependency court process for years, and well past the point of being seized, making the Fourth Amendment claim inapplicable to her alleged continued detention.  Even assuming the Fourth Amendment applies, an inmate (if

Plaintiff could so be considered for Fourth Amendment claim purposes) does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment.  *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

Turning to the Eighth Amendment, Courts have held that the "Eighth Amendment does not apply to plaintiffs' experience with their foster and adoptive parent."  *D.B. v. Brewer*, 2017 U.S. Dist. LEXIS 98656, at *15 (C.D. Cal. June 26, 2017), citing *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); accord *Hancock v. Miller*, 2020 U.S. Dist. LEXIS 53755, at *16 (M.D. Tenn. Mar. 27, 2020) (Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. Instead of Eighth Amendment protections, children have substantive due process rights under the Fourteenth Amendment to be free from the infliction of unnecessary harm in state-regulated foster homes.); *Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 744 F. Supp. 2d 1178, 1189 (D. Kan. 2010) ("Plaintiff's claims purportedly brought under the Eighth Amendment, however, are frivolous, since the complaint fails to allege that defendants' conduct toward him while in foster care [. . .] constituted 'punishment' for any crimes he may have committed, and thus is outside the scope of the Eighth Amendment's protections.")  As Plaintiff was not a criminal defendant convicted of a crime, and she had recourse for the conditions of her confinement within her juvenile dependency case, the Fourth and Eighth Amendment claims for cruel and unusual punishment, therefore, do not apply.

**E.      Plaintiff Has Not Stated a Claim for Any *Monell* Violation**

Under Section 1983, a public entity cannot be held responsible for the acts of its employees under a *respondeat superior* theory of liability.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Instead, because liability under Section 1983 rests on actions of the municipality – and not the actions of its employees – a plaintiff must show that the alleged constitutional deprivation was the product of a policy or custom of the municipality. *Id.* at 694.  "[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving

//

1      force' behind the plaintiff's deprivation of federal rights." *Bd. of the Cty. Comm'rs v. Brown*,

2      520 U.S. 397, 400 (1997).

3              To bring a claim under *Monell*, a plaintiff must allege facts (1) showing that she

4      possessed a constitutional right of which she was deprived; (2) identifying an officially

5      adopted policy or permanent custom of the local government; (3) showing that the policy

6      amounts to deliberate indifference to a plaintiff's constitutional rights; and (4) showing that

7      the policy or custom "caused" an employee to violate another person's constitutional right,

8      i.e., is the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40*

9      *Cnty. Of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  Allegations "may not simply recite the

10     elements of a cause of action, but must contain sufficient allegations of underlying facts to

11     give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel.*

12     *Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012), quoting *Starr v. Baca*, 652

13     F.3d 1203, 1216 (9th Cir. 2011).  "[D]eliberate indifference" exists when the need for more

14     or different action is so obvious, and the inadequacy of the current procedure so likely to

15     result in the violation of constitutional rights, that the policymakers can reasonably be said to

16     have been deliberately indifferent to the need. *Mortimer v. Baca*, 594 F.3d 714, 723 (9th Cir.

17     2010).  The allegations "must demonstrate a direct causal link between the municipal action

18     and the deprivation of federal rights." *Brown*, 520 U.S. at 404.  The factual allegations, taken

19     as true, must plausibly suggest entitlement to relief, so that it is fair to require the opposing

20     party to be subjected to the expense of discovery and litigation. *Id.*

21             In her Sixth claim, Plaintiff combines a few disparate, isolated incidents that transpired

22     over many years and then concludes that no less than seven ill-defined policies and practices

23     are represented in the examples.  This assertion is not supported by case law.  Plaintiff

24     conflates policy, practice, and training with speculation and conclusory language throughout

25     the *Monell* claims, without ever broaching specific facts related to policy or practice that

26     would plausibly have caused the cited injuries, subjecting the claim to dismissal.

27     //

28     //

### 1.      No Constitutional Deprivation Has Been Pled

To plead a claim based on municipal liability, the Plaintiff first has to show that there was actually a deprivation of a constitutional right. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). As discussed above, Plaintiff fails to specifically allege, or support, most of her deprivation of rights claims without which there can be no *Monell* cause of action. Additionally, claims that parents are not provided information or a social worker not providing updates regarding a child's living conditions are not constitutional violations. Families in the dependency system have varying degrees of rights that constantly shift; in this case alone ███████ was the guardian and then not the guardian. Some parents may never be entitled to updates, while others have supervised visits, and others regain physical custody, but a case can change based on a myriad of circumstances, to lump all the possible situations to say that parents are entitled to reports does not take into account the many procedural positions that may be present in a dependency case.

### 2.      No Policy or Procedure Has Been Adequately Pled

Determining an unconstitutional "policy" as opposed to an unconstitutional "custom" or "practice" differs under *Monell*. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff ignores this avenue of pleading a municipal liability claim and, instead, asserts a simple list of policies and customs which are claimed to result in constitutional violations -- none establish a policy or practice. There are three general areas where policies are alleged: the failure to protect (¶143[c-d]), concealing evidence from the state court (*Id*. at [e]), and retaliating against parents who reported alleged abuses.

#### a.      Failure to Protect

In support of the allegation that the County fails to protect the foster children in its custody, Plaintiff asks the Court to divine the support for the alleged policy through the examples presented. It is insufficient to site to "years" of unidentified scandals in support a

1    *Monell* claim for failure to protect.  Ephemeral past allegation and undefined individual abuses

2    does not equate to a practice or custom that is deliberately indifferent to abuse of children in

3    foster care.  Indeed, "[u]nwarranted inferences are insufficient to defeat a motion to dismiss."

4    *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  Using specific case examples for the

5    assertion that a policy exists requires that the examples be sufficiently factually similar to the

6    incident at issue.  "[C]onclusory allegations do not show that the incidents are factually

7    similar or plausibly show a 'persistent and widespread' custom (as opposed to 'isolated or

8    sporadic' incidents)."  *Bolden v. Richmond Police Dep't*, No. 23-cv-03006-LB, 2023 U.S.

9    Dist. LEXIS 139888, at *12-13 (N.D. Cal. Aug. 10, 2023); *See also, Sweiha v. Cty. of*

10   *Alameda*, 19-cv-03098-LB, 2019 U.S. Dist. LEXIS 170552 at *4-5 (N.D. Cal. Oct. 1, 2019)

11   (plaintiff's allegations of five other incidents do not show a custom or policy where the

12   incidents "have markedly different facts").

13          Plaintiff's use of prior incidents is unavailing as those prior incidents are markedly

14   different from the instant matter.   The first cited incident involved boys and a pedophile,

15   unspecified allegations of "suspicions," no facts as to how the constitutional violations are

16   similar to the instant case, and the whole incident took place 20 years ago.  The ███ case

17   was, as Plaintiff admits, dismissed against the alleged pedophile, and there is no constitutional

18   violation as to how the County "should have known" Mr. Mallet was a pedophile or how the

19   outcome of the case relates to the instant action.  Next, a 2017 case where the minor was being

20   overmedicated by her parent and removed, where later on the child was returned to a family

21   member appearing malnourished.  However, the inference is that the social worker on that

22   example case—Defendant Webb—did what she was supposed to and moved the minor to a

23   new home when her condition was discovered.  As to the *D.R.* case, the County had summary

24   judgment granted in its favor, meaning there is no finding of a Constitutional violation or

25   pattern or practice that could apply to this matter.  *D.R. v. Contra Costa Cty. CA*, No. 19-cv-

26   07152-MMC, 2024 U.S. Dist. LEXIS 71158, at *1 (N.D. Cal. Apr. 18, 2024).  The differences

27   continue.  As noted in the *B.D.* case, the issues with the reports to the Court was based on the

28   evidence of criminal history never being given to the case carrying social worker; meaning

there was no intentional omission or fabrication of evidence by the social worker.  *In re B.D.*, 35 Cal. App. 5th 803, 812 (2019).  In any event the policy that led to that outcome changed. Next, the matter concerning a social worker's DUI has no bearing on any policy and practice of the County.

Similarly, Plaintiff's undated grand jury findings regarding procedures for investigation or resolving parental complaints, do not implicate or lead to the conclusion that foster children are not protected.  ¶¶165 - 166.  Plaintiff's other grand jury-based allegation concerning the role of an ombudsman at CFS also does not relate to any custom or practice that would lead to a deprivation of rights of foster children.  *Id*.  Also, the reported lack of employees does not create a direct link to Constitutional violations.  Finally, Plaintiff provides no support for the conclusion that there's a practice of retaliation against parents or how such retaliation is applicable to this case when the current Plaintiff's parents had their rights admittedly terminated by the Juvenile Court.

Because the complaint fails to plead any actual policy, custom or practice, as it relates to failing to protect children, it also necessarily fails to show that a policy or custom was the "moving force" or "cause" behind the alleged constitutional injury.  Without facts alleging a "direct" or "affirmative" causal link between a policy or custom and the alleged constitutional violation, Plaintiff cannot state a *Monell* claim.  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

## IV.   CONCLUSION

Plaintiff's amended allegations do no survive scrutiny.  The factual underpinnings are simply isolated incidents cobbled together in an attempt to make a case.  Plaintiff cannot plead around the legal bars to this action, and, even if she has, she has not stated any state or Constitutional claim that can survive this motion.  This case has been pending for years, and the Plaintiff now has thousands of pages of records.  With all this time and information available and the defects still present on the face of the SAC, this matter should be dismissed with prejudice.

1

DATED: October 4, 2024          THOMAS L. GEIGER
                                COUNTY COUNSEL

2

3                               By: _____/s/ Jason W. Mauck_____

4                                   JASON W. MAUCK
                                    Deputy County Counsel
5                                   Attorneys for Defendants
                                    CONTRA COSTA COUNTY and
6                                   SOPHIA WEBB

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28